599 A.2d 1016

**M & D AUTO BODY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(JOHN PALLOTT), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 24, 1990.

Decided Nov. 4, 1991.

Reargument Denied Jan. 10, 1992.

Arthur J. Leonard, for petitioner.

John C. Reed, for respondents.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BYER, Judge.

On July 12, 1977, John Pallott, an automobile mechanic for M & D Auto Body, sustained a work-related injury. He received benefits for total disability.

M & D filed a petition for modification, alleging that Pallott's condition had changed from full to partial disability effective June 17, 1978, when he opened an auto repair and inspection station. Pallott admitted continuously oper-

ating his inspection station, but denied that his condition had changed from full disability to partial disability because: (1) his business suffered a loss each year except in 1979;[1] and (2) he was unable to perform any other type of work.

After several hearings, Referee Luxemberg issued an order granting M & D's modification petition on the basis that Pallott was only partially disabled because he operated an inspection station and "had the ability to accept" an "auto parts job." (Referee Luxemberg finding of fact, 21.)

Pallott appealed Referee Luxemberg's order, alleging that Referee Luxemberg should have recused himself from hearing this case because he had, on occasion, acted as counsel for the compensation carrier.

The board reversed Referee Luxemberg's order, stating:

There has been an issue raised by Claimant regarding a conflict of interest on the part of the Referee. Nothing on the record supports this allegation but Claimant should be given the opportunity to present evidence on this issue. The Board is reversing and remanding this case to Referee Luxemberg. The parties shall present evidence regarding the alleged conflict of interest. If the Referee determines that a conflict of interest exists or that an appearance of a conflict of interest exists thereby placing his impartiality in question, he should recuse himself. The case then will be assigned to a new Referee to be heard *de novo*.

Referee Luxemberg decided to recuse himself without conducting a hearing on the alleged conflict of interest. He did not place the recusal on the record. Nevertheless, the Bureau of Occupational Injury and Disease Compensation reassigned the case to Referee Morrison.[2]

1. Claimant's business resulted in a $1,698.00 profit for 1979.
2. Initially, the bureau reassigned the case to Referee Haley who scheduled a hearing for March 5, 1986. She received no testimony and, because of her impending departure as a referee, returned the case to the bureau.

Referee Morrison observed that Referee Luxemberg's recusal was not of record. Therefore, Referee Morrison solicited a stipulation from the parties that if Referee Luxemberg had decided to recuse himself, he could issue an order by way of a letter. M & D's counsel reasserted that no conflict of interest existed on the part of Referee Luxemberg (131a–132a). Referee Luxemberg then advised Referee Morrison that he had previously recused himself (Referee Morrison finding of fact, 6). The parties and Referee Morrison agreed to incorporate the testimony and evidence of the previous proceedings, in addition to supplementing the record with additional testimony, evidence and depositions.

Referee Morrison denied M & D's petition for modification, which previously had been granted by Referee Luxemburg, making the following pertinent conclusions of law:

1. That all parties are bound by the provisions of the Penna. Workmen's Compensation Act, as amended.

2. That the defendant presented sufficient evidence that claimant's disability was such that he could perform light duty work.

3. That the defendant has failed to present substantial, competent, credible evidence that work was available to the claimant within his physical and vocational abilities.

4. That the notice received by the claimant of the available jobs were insufficient. (*See Four Way Const. Co. v. Workmen's Compensation Appeal Board (Snyder)*, [113 Pa.Commonwealth Ct. 235], 536 A.2d 873 (1983)).

5. That the defendant failed to present substantial, competent, credible evidence that would establish the claimant's own business activities were profitable.

6. That the defendant has failed to meet the burden of proof necessary to modify payment of compensation from total to partial disability.

      *    *    *    *    *    *

10. That no credit is owed to the defendant for overpayment of compensation except for 1979 when claimant had a profit.

The board affirmed Referee Morrison's decision, and M & D now appeals.[3]

## REVIEW OF REMAND ORDER IN APPEAL FROM SUBSEQUENT FINAL ORDER

M & D asserts that the board erred vacating and remanding Referee Luxemberg's initial decision, because nothing in the record supports Pallott's allegation of a conflict of interest. Pallott counters by claiming that (1) M & D waived its right to appeal from the board's remand order when it agreed to proceed with the *de novo* hearing; and (2) Referee Luxemberg's recusal is proof of a conflict of interest.

■ We first shall address the appealability of the board's remand. The board's remand order was interlocutory and unappealable when it was entered. *FMC v. Workmen's Compensation Appeal Board (Wadatz)*, 116 Pa. Commonwealth Ct. 527, 542 A.2d 616 (1988) (en banc); *Murhon v. Workmen's Compensation Appeal Board*, 51 Pa.Commonwealth Ct. 214, 414 A.2d 161 (1980). Although in *FMC*, we recognized that a party could request permission to appeal from an interlocutory order involving a controlling question of law pursuant to 42 Pa.C.S. § 702(b),[4]

---

**3.** Our scope of review from a decision of the board is limited to determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** 42 Pa.C.S. § 702(b) provides:
When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.
In *FMC*, 116 Pa.Commonwealth Ct. at 530, 542 A.2d at 617, we stated:
Should counsel for a disappointed litigant feel that an order, though interlocutory on its face, involves a controlling question of law

M & D's failure to do so does not preclude review at this time, now that the board has entered a final order.

The propriety of a remand order may be reviewed after the completion of the remanded proceeding and the entry of a final order. *A & P Tea Co. v. Workmen's Compensation Appeal Board (Giglio)*, 114 Pa.Commonwealth Ct. 507, 539 A.2d 51 (1988); *Rettinger v. Workmen's Compensation Appeal Board (American Can Co.)*, 103 Pa.Commonwealth Ct. 595, 520 A.2d 1252 (1987). M & D's agreement to proceed *de novo* did not waive its right to contest the propriety of the unappealable remand order.

## PROPRIETY OF REMAND TO DETERMINE CONFLICT OF INTEREST

M & D asserts that (1) nothing in the record supports Pallott's allegation that a conflict of interest existed; and (2) Pallott's failure to move for Referee Luxemberg's recusal until after the unfavorable determination constituted waiver of his right to assert a conflict of interest existed.

To begin, it cannot be conclusively stated that the record fails to support the allegations of conflict of interest. Because the board did not address any of Pallott's other allegations that Referee Luxemberg's findings of fact and conclusions of law were not supported by substantial evidence, there was no review of how the alleged conflict of interest may have affected Referee's Luxemberg's decision.

In *Aversa v. Workmen's Compensation Appeal Board*, 63 Pa.Commonwealth Ct. 611, 615–16, 439 A.2d 1269, 1271 (1982), we stated:

> A case will be remanded only where, as in *Republic Steel Corp. v. Workmen's Compensation Appeal Board*, [54 Pa.Commonwealth Ct. 113], 420 A.2d 37 (1980), "the

where an immediate appeal would materially advance the ultimate termination of the matter, an application may be made to the court or to the adjudicating government unit to certify that issue to us. See Section 702 of the Judicial Code, 42 Pa.C.S. Section 702. Should the adjudicating government agency refuse to certify, we may review that denial.

record ... has memorialized an occurrence ... [which] [t]o any objective eye ... [could] leave only one impression: that the referee stepped out of his role as an impartial fact finder and assumed the role of an advocate ..."

However, in *Republic Steel* we did not hold that the *only* way a case could be remanded because of referee bias was for a questionable occurrence to be memorialized in the record, but stated merely that "the record of [*Republic Steel*] ... memorialized an occurrence that dictates the remand ... for additional proceedings". *Republic Steel*, 54 Pa.Commonwealth Ct. at 117, 420 A.2d at 39. Here, the actual potential for bias was not memorialized in the record, because Referee Luxemberg did not become an advocate. This is a case where the fact finder chose to recuse himself because he had represented a party involved in the proceedings. Although Referee Luxemberg did not recuse himself during the initial proceedings, we must assume from his subsequent recusal that recusal was required.

■ Therefore, we consider M & D's argument that Pallott's failure to move for Referee Luxemberg's recusal until after the unfavorable determination constituted a waiver of Pallott's right to assert a conflict of interest.

In *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985), the Supreme Court discussed the situation of a disgruntled litigant complaining of partiality *after* an unfavorable ruling.

> Charges of prejudice or unfairness made after trial expose the trial bench to ridicule and litigants to the uncertain collateral attack of adjudications upon which they have placed their reliance. Litigants are given their opportunity to present their cause and once that opportunity has passed, we are loathe to reopen the controversy for another airing, save for the greatest of need.

*Id.*, 507 Pa. at 225, 489 A.2d at 1301. Therefore,

> [o]nce the trial is completed with the *entry of a verdict*, a party is deemed to have waived his right to have a judge

disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result.

*Id.,* 507 Pa. at 222, 489 A.2d at 1300 (emphasis added), *citing Commonwealth v. Corbin,* 447 Pa. 463, 291 A.2d 307 (1972). M & D asserts that we are bound to apply the recusal standard set forth in *Reilly.* We do not agree.

First, the appellant in *Reilly,* was afforded a pretrial opportunity to request the trial judge's recusal. Here, there is no evidence in the record showing when Pallott discovered the potential conflict of interest; Referee Luxemberg simply recused himself before any evidence on this matter could be discovered or introduced.

Second, *Reilly* involved a jury trial and not a workmen's compensation case. Pallott did not have a jury as factfinder but instead had Referee Luxemberg. It would not promote the remedial purposes of the workmen's compensation statute by applying the more stringent legal standards of judicial proceedings to an administrative proceeding. *See Cudo v. Hallstead Foundry, Inc.,* 517 Pa. 553, 539 A.2d 792 (1988). Of further importance here, as *Reilly* recognizes, a strong public interest could outweigh the untimeliness of a recusal motion.

Because the board's remand was proper and we must consider this case on the assumption that Referee Luxemberg's recusal was required, Referee Luxemberg's decision must be considered tainted. Under the terms of the remand order, Referee Morrison did not err in considering the case *de novo. See Thomas v. Workmen's Compensation Appeal Board (State Farm Insurance Cos.),* 78 Pa.Commonwealth Ct. 274, 467 A.2d 430 (1983). Therefore, we need not address M & D's argument that Referee Luxemberg's opinion was supported by substantial evidence and shall consider only whether the board correctly affirmed the Referee Morrison's decision.

## MERITS

M & D argues that Referee Morrison's decision (1) is not supported by substantial evidence and (2) improperly ap-

plied retroactively the job-availability notice standard set forth in *Four–Way Construction Co. v. Workmen's Compensation Appeal Board (Snyder)*, 113 Pa.Commonwealth Ct. 235, 536 A.2d 873 (1988), instead of the more general requirements of *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968).

Referee Morrison concluded that M & D "presented sufficient evidence that Claimant's disability was such that he could perform light duty work," (Conclusion of law, 2), but that M & D "failed to present substantial, competent, credible evidence that work was available to the Claimant within his physical and vocational abilities." (Conclusion of law, 3). In other words, Referee Morrison concluded that M & D failed to meet its burden under the second prong of *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), which requires the employer to refer the claimant to then open jobs for which the claimant has medical clearance.

M & D recommended various jobs to Pallott, two of which it asserts Pallott was specially qualified for: (1) car salesman; and (2) auto inspection mechanic. Referee Morrison ruled that (1) M & D gave Pallott improper notice under *Four–Way Construction* for these jobs; and (2) these jobs were not within Pallott's physical and vocational abilities.

■ *Four–Way Construction* requires that the employer provide the claimant a general job classification along with a basic description, which Referee Morrison found was not provided to Pallott. *Four–Way Construction* was decided in 1983, after M & D referred Pallott to the car salesman and auto inspection mechanic jobs, but while this case was pending on appeal. It is well-settled that changes in decisional law which occur during litigation will be applied to cases pending on appeal. *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 460 A.2d 237 (1983).[5]

5. Moreover, where as here, decisional law relies on a statutory interpretation which was not wholly without precedent, such decisions are treated as relating back to the original statute because they are nothing more than interpretations of existing legislation. *McCloskey.*

Therefore, we hold that the referee correctly applied the notice requirement of *Four–Way Construction* to this case.

■ *Four–Way Construction* requires that an employer "must at least provide the [c]laimant or his counsel a general job classification along with a basic description to give [c]laimant something to go on." *Id.* 113 Pa.Commonwealth Ct. at 239, 536 A.2d at 874–875. Here, M & D's rehabilitation counselor told Pallott that a position selling cars was available. The nature of a car sales position is such that it does not require much additional information to permit a claimant to determine whether the position may be within his medical limitations. Therefore, we hold that M & D satisfied the notice requirement of *Four–Way Construction.*

However, Pallott testified that he did not seek the car salesman position, because he considered it by nature a deceitful business and contrary to his personality. Referee Morrison found this testimony credible, finding that Pallott "lack[ed] the personality or vocational ability to be a car salesman." (Referee Morrison finding of fact, 20).

■ Although a job must be suited to the claimant both medically and vocationally, the finding that Pallott lacked the personality to be a car salesman is not sufficient to support conclusion that M & D failed to meet its burden of proof (Referee Morrison conclusion of law, 6). Our review of the record demonstrates that Pallott was vocationally qualified to apply for the job even though he considered it degrading. *See Hendry v. Workmen's Compensation Appeal Board (Miller & Norford, Inc.),* 133 Pa.Commonwealth Ct. 28, 577 A.2d 933 (1990). Once the employer has provided the claimant with a suitable job referral, the burden then shifts to the claimant to follow through in good faith with the job referral. *Kachinski.* We conclude that M & D met its initial burden but that Pallott failed to establish that he followed through in good faith with the referrals.

Therefore, we reverse.

## ORDER

We reverse the order of the Workmen's Compensation Appeal Board.

BARBIERI, Senior Judge, dissenting.

Most respectfully, I disagree with the result reached by the majority in that portion of its opinion designated as "MERITS", because I believe that the majority has erred in fact finding contrary to the factual determination of the referee. The referee found:

20. That your Referee finds as fact the claimant's credible testimony establishes he lacked the personality or vocational ability to be a car salesman.

21. That your Referee finds as fact that the job offers made available to the claimant by the defendant did not contain any description of the jobs' requirements. Therefore, claimant's failure to follow-up on these offers was reasonable.

Findings of Fact Nos. 20 and 21.

Finding of Fact No. 20 is supported by the record, since there is no testimony that would establish as "suitable" for this Claimant the occupation of car salesman.[1] On the contrary, in support of Finding of Fact No. 20, the vital testimony of the Claimant as to car salesman is as follows:

Q. Now, Mrs. Kearns also mentioned a possible position as a sales or auto sales representative for Bill Pitts' [sic] Fords.

A. Yes.

Q. Did she mention that to you?

A. Yes.

Q. Did you explore that at all?

A. No.

Q. For what reason? Why didn't you explore that?

---

1. The majority concedes that application of the *Kachinski* tests require that the "employer provide[d] the Claimant with a *suitable* job referral ..." (Emphasis added.)

A. Well, I don't particularly know anything about selling cars as it is. Some of their—maybe you don't like what I say. Some of this is shady dealing. I don't go along with it. I would be required to do whatever they tell me to do naturally if I worked for them.

R.R. 163a–164a.

It certainly must be conceded that a referral job must be within the vocational ability of the Claimant; for example, a job opening for an opera singer is not an available employment for one who cannot sing. Here, as to the referral suggested by employer, Claimant is not qualified on the record in this case to fill a salesman's job. The majority points to no evidence, or other basis for a finding that Claimant can perform as a salesman, a calling which requires certain capabilities which this Claimant lacks. In short, Claimant is not vocationally qualified for a post requiring sales skills,[2] and Employer's witness who suggested the sales job certainly provided no competent basis on which a finding of vocational qualification could be based. She testified:

Q. In the third survey job you found a job as a car salesman?

A. Yes for Phil Fitts Ford.

Q. What was involved in that job?

A. That was basically selling cars to the public.

Q. What led you to believe that Mr. Pallott was qualified for this position?

2. It should be pointed out also that the sales job offered here provided no compensation that could establish earning power or certain earnings, but was solely on commission, a very unlikely test of earning power for one starting in a suggested sales job, with no experience or demonstrated capabilities or qualifications.

> A. ... I next conducted a survey in February of 1980 and found two job openings. The one was a sales representative to sell cars at Phil Fitts Ford and the other job as Security Officer for the Lawrence County Job in New Castle here.
> Q. Was the Ford Sales Job an hourly pay job?
> A. Commission basis.
> R.R. 75a.

A. Well again because it had something to do with cars and I felt he knew about cars and also it was a sedentary and light duty job.

R.R. 81a.

It would appear to me that by implementing the majority opinion on this issue a serious injustice could be visited upon this badly injured and disabled Claimant; also, a result, in my opinion, not justified by the record or any decision of our Courts.

Accordingly, since the employer has failed to demonstrate error in the findings of the referee that the employer failed to prove earning power that would reduce the claimant's benefits from those for total disability to lesser amounts based upon a properly established resurgence of earning power, I would affirm the order of the Workmen's Compensation Appeal Board in affirming the decision of the referee on the merits of the case.