IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Lynch,                          :
                        Petitioner      :
                                        :
        v.                              : No. 456 C.D. 2024
                                        : Submitted: April 8, 2025
Downs Racing, LP (Workers'              :
Compensation Appeal Board),             :
                        Respondent      :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  July 28, 2025


        Barbara Lynch (Claimant), *pro se*, petitions for review of the March 5, 2024
order (Order) of the Workers' Compensation Appeal Board (Board), which affirmed
the August 14, 2023 decision (Decision) of a Workers' Compensation Judge (WCJ)
granting Downs Racing, LP's (Employer) petition to suspend compensation benefits
(Suspension Petition) and petition to terminate compensation benefits (Termination
Petitions), and denying Claimant's petition to review compensation benefits
(Review Petition).  After review, we affirm.

# BACKGROUND

Claimant worked as a floor manager in Employer's casino. Certified Record (C.R.) at 137-38.[1] On August 21, 2021, Claimant sustained a work-related injury after falling and landing on her knee. *Id*. at 8-9. Employer accepted liability for Claimant's knee injury by a Notice of Compensation Payable (NCP). *Id*. On May 31, 2022, Employer filed a Suspension Petition and two Termination Petitions asserting Claimant was fully recovered and able to return to work as of May 9, 2022. *Id*. at 8-18. Claimant denied being fully recovered or able to return to work. *Id*. at 22. On November 2, 2022, Claimant filed a Review Petition requesting an expansion of her injury description to include low back and right sacroiliac (SI) joint injuries sustained as a result of her fall at work. *Id*. at 36. Employer denied there should be an expansion of injury and contended Claimant was fully recovered from any injury she sustained as a result of her fall. *Id*. at 42.

The WCJ accepted evidence and held hearings addressing Employer's Suspension Petition and Termination Petitions, as well as Claimant's Review Petition. Claimant testified on her own behalf. Claimant testified that when she fell at work in August 2021, she injured her knee and her back, and she received treatment for both injuries. *Id*. at 147. Claimant treated with Tan Chen, M.D. (Dr. Chen) for her back injury and Dr. Douglas Jon Vanderbrook (Dr. Vanderbrook) for her knee injury. *Id*. Claimant indicated she attended physical therapy for her back and obtained pain management injections in her back. *Id*. at 146-47. Ultimately, Claimant had an SI joint fusion surgery. *Id*. at 148. Regarding her back injury, Claimant testified she continued "having extreme pain." *Id*. at 149. She explained she was unable to walk for long periods of time and doing anything, including

---

[1] Page numbers to the certified record reference electronic pagination.

sweeping or washing her dishes at night, caused "really excruciating sharp pain in [her] back." *Id*. She stated she was unable to lay on her back and could not sit for long periods of time. *Id*.

Regarding her knee, Claimant testified she had a total knee replacement surgery. *Id*. at 150. Claimant explained the surgery did "not really" help and she continued to have knee pain. *Id*. Claimant stated her knee would occasionally give out, and that it was "unbearable at times." *Id*. Claimant also explained that she had a previous injury to her knee from 1988 following an automobile accident, and she had arthroscopic surgery at that time. *Id*. at 152. Claimant treated with Chad Ghigiarelli, M.D. (Dr. Ghigiarelli) for the previous knee injury. *Id*. She explained that following her earlier surgery, Dr. Ghigiarelli regularly gave her knee injections to manage her pain. *Id*. at 153, 166. She indicated Dr. Ghigiarelli also drained her knee multiple times before her work injury. *Id*. Claimant also stated Dr. Ghigiarelli brought up her need for right knee replacement in August 2018, before her fall at work. *Id*. at 166.

At the hearing, Claimant testified she was "still in a lot of pain," unable to walk up and down steps normally, and unable to walk for more than 15-20 minutes. *Id*. at 156. She stated she used a cane because of her instability and back pain. *Id*. She also testified she was unable to pivot, had excruciating pain at night, and used pain medications. *Id*. Claimant admitted Employer offered she could return to her previous job of floor manager, but she did not accept Employer's offer because the job required standing for eight hours and running back and forth from table to table. *Id*. at 159-60.

Claimant also submitted the oral deposition testimony of Dr. Chen. *Id*. at 183. Dr. Chen testified he began treating Claimant in October 2021 following her fall at

work.  *Id*. at 189.  Dr. Chen indicated Claimant had "fairly severe right knee pain and swelling."  *Id*.  According to Dr. Chen, testing revealed Claimant had arthritis of the knee, a fairly significant joint effusion on the right side, and a fracture through her patella.  *Id*. at 191.  Regarding the scan of her back and pelvis, Dr. Chen explained her back demonstrated fairly significant lower lumbar degenerative changes and significant joint degeneration of both SI joints.  *Id*.  Dr. Chen testified that because of Claimant's significant SI joint degenerative changes, he performed surgery on May 27, 2022.  *Id*.  Dr. Chen indicated he did not release Claimant to return to work because she had multiple ongoing issues which were quite severe in nature, with significant difficulties with weight bearing and ambulation.  *Id*. at 201.  Dr. Chen explained Claimant could do modified duties if they were available, including desk work.  *Id*.  Dr. Chen testified he did not believe Claimant could return to full-duty work given the physical nature of her job, although he admitted he did not have a written job description with Claimant's duties.  *Id*. at 202, 249-50.  Dr. Chen testified that, within a reasonable degree of medical certainty, he believed Claimant had an aggravation of her right SI joint with pain brought to light by her fall at work.  *Id*. at 203, 208.

Although Dr. Chen did not treat Claimant's knee injury, he testified he reviewed Dr. Vanderbrook's records regarding treatment of the right knee and Dr. Chen explained testing showed significant osteoarthritis of the knee, and the patella fracture.  *Id*.  He indicated Claimant had a total knee replacement surgery in September 2022. *Id*.  Dr. Chen testified that he believed Claimant's fall at work was "very likely" exacerbated by her chronic arthritic condition of her knee.  *Id*.  at 209-10.  On cross-examination, Dr. Chen admitted he had reservations testifying about Claimant's knee replacement because that is not in his normal scope of practice, and

4

he did not prepare any reports based on his physical examinations of Claimant. *Id.* at 219-20. Furthermore, Dr. Chen indicated he did not know Claimant had previously treated with Dr. Ghigiarelli for her right knee until, at least, June 2021. *Id.* at 248-49.

Employer submitted the deposition testimony of Dr. Michael Banas (Dr. Banas), a board-certified orthopedic surgeon who performed an Independent Medical Examination (IME) of Claimant on March 9, 2022. *Id.* at 318. Dr. Banas testified that during his examination, Claimant moved slowly and was in no distress, she was able to transfer from standing to sitting interdependently, and she had a slow, steady gait in the hallway. *Id.* at 321. He noted Claimant's right knee had mild fluid in the joint and was tender. *Id.* Dr. Banas stated that when lying down Claimant had active range of motion in her right knee and when standing she was able to balance on her toes and heels. *Id.*

Dr. Banas testified that in conducting his IME, he reviewed multiple records including Dr. Ghigiarelli's treatment records, the emergency department record from Claimant's August 22, 2021 visit, and records from Dr. Vanderbrook and Dr. Chen. *Id.* at 325. Dr. Banas also indicated he reviewed Claimant's physical therapy treatment records, and radiographic studies including x-rays and Computed Axial Tomography (CAT) scans. *Id.* at 327. Dr. Banas explained:

> At the time of the [IME, Claimant] reported a history of right knee surgery that predated the 8/21/21 event. Available medical records also identify an 8/20/18 pre-existing diagnosis of severe degenerative joint disease of the right knee. [Claimant] required prolonged orthopedic care under the direction of Dr. Ghigiarelli from 8/20/18 through 6/22/21 with regards to her pre-existing right knee osteoarthritis. These records consistently documented objective abnormalities throughout [Claimant's] right patella. [Claimant] required approximately eleven corticosteroid injections into her right knee from 8/20/18 through 6/22/21.

5

*Id*. at 329. Dr. Banas agreed Claimant sustained a lumbar strain, and that her subsequent care was appropriate and necessary for that diagnosis. *Id*. He also indicated Claimant sustained a right patella fracture at the time of the work injury, and he believed her orthopedic care was appropriate and necessary for that diagnosis. *Id*. Based on an orthopedic record indicating Claimant's right patella fracture was healed, however, Dr. Banas stated he believed Claimant's injury was resolved as of December 30, 2021. *Id*. Therefore, Dr. Banas indicated he would place no restrictions on Claimant's activity, and he anticipated no long-term issues in the future. *Id*. Dr. Banas explained although the x-rays of Claimant's right knee indicated severe osteoarthritis, he did not equate those findings to the work incident because Claimant had a well-documented pre-existing history of severe degenerative joint disease in the right knee. *Id*. Further, Dr. Banas indicated any need for a future right knee surgery was not due to Claimant's fall at work, but rather to Claimant's history of severe joint disease predating the work incident. *Id*. Dr. Banas noted Claimant's orthopedic treatment records consistently documented her pre-existing right knee joint disease. *Id*. at 330. Dr. Banas also explained that based on the radiographic materials, he believed Claimant sustained a lumbar disc injury at the time of the work incident, but not any other lumbar or SI joint injury. *Id*. Dr. Banas also did not believe Claimant's ongoing symptoms were caused by her fall at work. *Id*.

Dr. Banas opined to a reasonable degree of medical certainty Claimant sustained a lumbar strain and right patella fracture from her fall at work, and both injuries had healed and resolved. *Id*. at 426. Additionally, Dr. Banas indicated he did not believe Claimant sustained any other injury as a result of her fall at work. *Id*. at 426-27. Moreover, Dr. Banas stated his opinion, with a reasonable degree of

6

medical certainty, was Claimant was fully recovered and had no residual disability from her injuries, and that she had no restriction on her activities. *Id*. at 431-32.

On August 14, 2023, the WCJ issued his Decision concluding Employer met its burden of proof to establish by competent and credible medical evidence that Claimant fully recovered from any work-related injury to her lumbar spine and right knee. *Id*. at 70. After reviewing the testimony from both physicians and the Claimant, the WCJ accepted as "competent, credible, and worthy of belief, the opinion of Dr. Banas, being more persuasive than that of Dr. Chen." *Id*. at 68. Regarding her right knee injury, the WCJ explained:

> Dr. Chen attempted to discuss and opine with regard to Claimant's right knee, but it is apparent from his testimony that he did not treat her for her right knee injury, did not even review Dr. Ghigiarelli's records, and seemed to be unprepared to opine with regard to any treatment or condition regarding Claimant's right knee. Therefore, with regard to her right knee injury and future knee replacement, his testimony will be specifically rejected as not credible, convincing, or persuasive.

*Id*. at 69. The WCJ further indicated he was "impressed with the testimony of Dr. Banas" who reviewed orthopedic records both before and after Claimant's fall at work. *Id*. The WCJ relied on Dr. Banas' testimony that Claimant "sustained lumbar strain and no other injury to her low back as a result of the fall at work, from which she had fully recovered" and she "had no residual disability related to the resolved lumbar strain, with no restriction on her activities." *Id*. Additionally, the WCJ concluded, based on Dr. Banas' testimony, that Claimant had "no residual disability from the non-displaced patella fracture, and the lumbar spondylosis and degenerative arthritis of her [SI] joints are not causally related to her fall at work." *Id*.

7

Therefore, the WCJ found Employer proved Claimant had fully recovered from any work-related injury to her back and right knee. *Id*. at 70. Further, the WCJ indicated Employer established Claimant was capable of returning to employment at her pre-injury position Employer offered to her, which she refused to accept. *Id*. The WCJ found Employer was entitled to modify Claimant's workers' compensation benefits as of May 9, 2022, the date Employer asked her to return to her job, for failing to return to her employment with Employer. *Id*. Finally, regarding Claimant's Review Petition, the WCJ determined Claimant failed to meet her burden of proof to expand the definition of her injury in the NCP. *Id*. Thus, the WCJ granted Employer's Suspension Petition and Termination Petitions, and denied and dismissed Claimant's Review Petition. *Id*.

Claimant appealed to the Board. The Board noted Claimant had the burden of proving her injury description should be expanded and, based on the testimony of Dr. Banas that Claimant sustained the low back strain, she met the burden to modify her injury description as to her back injury. *Id*. at 103. However, the Board concluded Claimant failed to meet her burden of proof as to any other injuries. *Id*. Additionally, the Board noted the WCJ had "complete authority over questions of credibility," and thus Employer met its burden of demonstrating Claimant's injuries fully ceased because the WCJ did not accept Claimant's testimony as credible. *Id*. at 103-04. Therefore, the Board affirmed the WCJ's Decision, but modified Claimant's injury description to include a lumbar strain, which was fully recovered. *Id*. at 105.

Claimant now petitions for this Court's review. On appeal, Claimant asks this Court to determine she is eligible for workers' compensation benefits and reverse the Board's Order. Claimant details numerous alleged errors by the WCJ and the

8

Board, but the basic premise of Claimant's arguments to this Court is that she disagrees with the WCJ's credibility determinations.[2]

## DISCUSSION

This Court reviews the Board's orders in workers' compensation appeals for violations of a party's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the Board's decision. *Id.* Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021). In performing a substantial evidence analysis, we view the evidence in the light most favorable to the prevailing party. *Id*. It is immaterial whether there is evidence in the record to support a contrary finding. *Id*.

---

[2] In her Statement of the Question(s) Involved section of her Brief, Claimant states: "The issue is whether [Claimant] is eligible for benefits." Claimant's Br. at 4. In the Summary of Argument section of her Brief, Claimant provides:

> I respectfully request reversal of the [Board's] decision and the reinstatement of my Workers' Compensation benefits. I ask this for a variety of reasons, including the [WCJ] did not accept (which was reversed by the [Board]) my work-related injury of lumbar strain; Dr. Chen's diagnosis of the aggravation of right-side [SI] joint pain that both the [WCJ] and [Board] should have accepted; the court's not recognizing my [SI] joint dysfunction and spondylosis as a work-related injury; the additional testimony that would have been given on all my back injuries and conditions by Dr. Chen if these conditions were accepted as work-related injuries during my hearing with the [WCJ]; a major issue in the [WCJ's] statement of facts of the date I received pain treatment (which greatly affected Dr. Banas' statement and the [WCJ's] opinion of it); Judge Spizer not recusing himself despite a personal conflict of interest with me; and a variety of issues with Dr. Haber's report and diagnoses. For these reasons, the [Board's Order] should be reversed and my full benefits reinstated.

Claimant's Br. at 8.

Under Section 413(a) of the Workers' Compensation Act[3] (Act), a WCJ may, at any time, modify, suspend, or terminate a claimant's workers' compensation benefits upon petition filed by either party and upon proof that the disability of the claimant has increased, decreased, or ceased. 77 P.S. § 772. For a claimant to expand the description of an injury in an NCP, the claimant must file a review petition. Section 413 of the Act, 77 P.S. § 771. The burden is then on the claimant to prove with unequivocal medical evidence that the alleged additional injuries were caused by the work incident. *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071 (Pa. Cmwlth. 2011). Conversely, to terminate or suspend benefits because a claimant's disability has reduced or ceased because of an improvement in the claimant's physical ability, an employer must file a petition based upon medical proof that a claimant's physical condition has changed. *Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, 919 A.2d 922, 926 (Pa. 2007). An employer may satisfy its burden by offering unequivocal medical evidence which establishes within a reasonable degree of medical certainty that the claimant has fully recovered and can return to work without restriction. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Even where a claimant has complaints of continued pain, if the WCJ credits an employer's medical expert's unequivocal testimony that there are no objective medical findings which either substantiate the complaints or connect them to the work injury, termination of benefits is proper. *Id*.

When it comes to questions of credibility and acceptance of evidence, the WCJ is the ultimate fact finder in workers' compensation cases and is entitled to

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

weigh the evidence and assess credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (citation omitted). "The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *A&J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (citation omitted). This Court will not disturb a WCJ's findings so long as there is substantial evidence in the record to support those findings. *Berardelli v. Workmen's Comp. Appeal Bd. (Bureau of Pers. State Workmen's Ins. Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Reviewing the record evidence in the light most favorable to Employer, as this Court must, unequivocal and, therefore, competent, substantial record evidence supported the WCJ's acceptance of Dr. Banas's testimony relating to Claimant's injuries and full recovery. Dr. Banas testified that Claimant sustained a lumbar strain and right patella fracture from her fall at work, and that both injuries healed and fully resolved by the date of her IME. Additionally, Dr. Banas opined Claimant had no residual disability from any of her injuries and no restriction on her activities. Dr. Banas based his opinions on his physical examination of Claimant, his review of Claimant's radiographic studies including x-rays and CAT scans, and his review of Claimant's medical records including those from Dr. Ghigiarelli, Dr. Vanderbrook, and Dr. Chen. Further, Dr. Banas testified his opinions were given with a reasonable degree of medical certainty. Accordingly, Dr. Banas's unequivocal testimony was substantial competent evidence upon which the WCJ properly relied in determining Claimant was fully recovered and able to return to work without restriction.

Furthermore, it is inconsequential that Claimant's expert, Dr. Chen, testified Claimant had an aggravation of her right SI joint pain due to her fall at work and

11

was unable to return to work. Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether the record supports the findings the WCJ actually made. *A & J Builders, Inc.*, 78 A.3d at 1238. Substantial record evidence supported the WCJ's rejection of Claimant's testimony relating to her ongoing pain and inability to work. Additionally, the record supported the WCJ's rejection of Dr. Chen's testimony relating Claimant's SI joint injury and treatment to her fall at work, and his testimony regarding Claimant's inability to return to work, specifically where Dr. Chen admitted he was unfamiliar with Claimant's job duties as a floor manager and he had not been provided a job description to review. Because substantial evidence supported the WCJ's findings, there is no basis on which this Court may reverse the WCJ's conclusion that Claimant suffered no injuries beyond her accepted work injuries. To the extent Claimant seeks to have this Court reweigh the evidence, we decline to do so because the WCJ has the sole authority to assess credibility, resolve conflicting evidence, and determine the weight to give the evidence. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155-56 (Pa. Cmwlth. 1998). Therefore, the WCJ properly determined Claimant did not meet her burden of proving her accepted work injury should be expanded to include a right SI joint injury and denied her Review Petition. Additionally, the WCJ properly determined Employer met its burden of proving Claimant's disability ceased because her physical ability improved and granted Employer's Suspension Petition and Termination Petitions. Accordingly, the Board did not err in affirming the WCJ's Decision.

12

**CONCLUSION**

For the reasons outlined above, we affirm the Board's Order.[4]

_____
STACY WALLACE, Judge

---

[4] Claimant argues the Board erred by affirming the WCJ because the WCJ "should have recused himself from presiding over this case due to his prior relationship with" Claimant. *See* Claimant's Br. at 11. Generally, issues not raised by a party before the WCJ and in an appeal to the Board are waived and cannot be considered by this Court. *Simmons v. Workers' Comp. Appeal Bd. (Powertrack Int'l)*, 96 A.3d 1143, 1144 n.1 (Pa. Cmwlth. 2014). Regarding a WCJ's recusal, this Court has held a WCJ's recusal is a matter of individual discretion for the WCJ, and a party must normally raise the issue of recusal before a decision has been rendered in a case or that issue will be deemed waived. *See M & D Auto Body v. Workmen's Comp. Appeal Bd.*, 599 A.2d 1016, 1019 (Pa. Cmwlth. 1992); *Thomas v. Workmen's Comp. Appeal Bd. (Ida's Frosted Products, Inc.)*, 680 A.2d 24, 26 (Pa. Cmwlth. 1996). A noted exception to this rule is when a party does not know of a potential conflict before the close of the record. *M & D Auto Body*, 599 A.2d at 1019. Where a party is unaware of the conflict and raises the issue after the record is closed, the party will not be deemed to have waived the issue. *Id.* Here, Claimant asserts in her Brief that the WCJ had previously represented her in a divorce proceeding before she "terminated him." Claimant's Br. at 11. Accordingly, Claimant would have been aware of any alleged conflict before the WCJ issued his Decision. A review of the record reveals that Claimant did not raise the issue before the WCJ or before the Board. Therefore, the issue is waived.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Lynch, : 
                    Petitioner : 
                     : 
      v. : No. 456 C.D. 2024
                     : 
Downs Racing, LP (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

# **O R D E R**

**AND NOW**, this 28th day of July 2025, the March 5, 2024 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
STACY WALLACE, Judge